UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| D.B.C. CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> PHILIPPINE FOODTRADE CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO: 3:22cv57-HTW-LGI <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff D.B.C. Corporation ("DBC" or "Plaintiff"), for its Complaint against Defendant Philippine Foodtrade Corporation ("PFC" or "Defendant"), alleges and avers as follows:

### NATURE OF THE ACTION

1. This is an action to enjoin wrongful conduct and collect damages stemming from Defendant's acts of trademark infringement, trade dress infringement, dilution, contributory trademark infringement, and unfair competition under the Lanham Act, as amended, 15 U.S.C. § 1051 *et seq.*; and trade mark / trade dress infringement, and unfair competition under Mississippi law.

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338. DBC's federal claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. § 1501 *et seq.* 28 U.S.C. § 1367 gives this Court supplemental

1

jurisdiction over DBC's state-law claim because that claim is substantially related to DBC's federal claims and arises out of the same constitutional case or controversy.

3. PFC is a foreign corporation conducting business within the State of Mississippi by having sold at least one rolled wafer cookie product to a Mississippi retailer. This Court has personal jurisdiction over PFC pursuant to Mississippi's Long Arm Statute (Miss. Code Ann. § 13-3-57) and Federal Rule of Civil Procedure 4(k).

4. Venue is proper under, *inter alia*, 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this "judicial district."

## PARTIES

5. Plaintiff DBC is a Mississippi corporation with its principal place of business at 228 Industrial Drive North, Madison, Mississippi 39110. Plaintiff bakes, sells, and distributes various lines of rolled wafer cookies lined with chocolate and/or filled with various crème fillings marketed under the names "Pirouline" and "Crème de Pirouline" through retail and other outlets across the continental United States and Canada, as well as in Mexico, parts of Central and South America, the Middle East, China, Japan, the Philippines, Australia, and other countries or continents around the world.

6. Upon information and belief, PFC is a California corporation, with its principal place of business located at 2626 S. Malt Avenue, Commerce, CA 90040.

7. As further described below, PFC sells and/or distributes in the stream of commerce rolled wafer cookie products that infringe on DBC's federally registered trademark and do so in packaging that also infringes on DBC's federally registered trademark.

8. PFC has sold at least one variety of these infringing products to a retailer in this judicial district, from whom consumers have purchased the infringing product.

9. As further described below, only the remedies DBC seeks, including injunctive relief, will stop PFC's practices of infringement.

## FACTS COMMON TO ALL COUNTS

### DBC CORPORATION AND DBC'S RIGHTS

10. Plaintiff DBC is a unique company, tracing its humble roots back to 1860's Belgium, where the De Beukelaer family first began baking. In the early 1980's, a member of the original De Beukelaer family, Peter De Beukelaer, moved to the United States, bringing with him over 150 years of family heritage, knowledge, and skill baking premium specialty cookies. Mr. De Beukelaer founded D.B.C. Corporation and continued producing the "Pirouline" rolled wafer cookie and chocolate-lined rolled wafer cookie in the United States. In the early 1990's, D.B.C. began producing sweet rolled wafer cookies with crème under the name "Crème de Pirouline." DBC continues to make, market and sell all of these Pirouline products today.

11. DBC has invested substantial time, effort, and money into building, developing, and maintaining its brands and its products, including the Pirouline and Crème de Pirouline rolled wafer cookies, which it has popularized worldwide. Today, DBC is the exclusive producer of the Pirouline products, which have expanded to include dark chocolate, chocolate hazelnut, and vanilla flavors, as well as seasonal strawberry and lemon flavors.

12. DBC currently owns U.S. Trademark registrations for the use of the distinctive marks "PIROULINE" and "CRÈME DE PIROULINE" in connection with the marketing, sale, and distribution of its premium specialty rolled cookie products.

13. DBC has also used and exhibited a certain distinctive trade dress in connection with the marketing, sale, and distribution of the Pirouline artisan rolled wafer since the product was first

3

created. The Pirouline trade dress consists of a helical line formed in and extending the length of a cylindrical cookie, in a color which contrasts with the cookie (the "Helical Stripe Mark"):







14. DBC owns U.S. Trademark Registration No. 1,634,930 for the distinctive Helical Stripe Mark associated with its Pirouline products, which has been registered with the United States Patent and Trademark Office since 1991. *See* Exhibit 1 (United States Patent and Trademark Office, Trademark Electronic Search System (TESS) Registration Record (last updated Aug. 24, 2021)).

15. In addition to being a distinctive characteristic of the Pirouline products themselves, DBC's signature Helical Stripe Mark is also prominently displayed and promoted on the products' packaging and promotional materials, as well as through DBC's website and advertising, including on the packaging for other DBC products, such as its seasonal lines. This Helical Stripe Mark is well-known in the industry and widely associated with DBC and the products at issue.

16. DBC sells and distributes its Pirouline products through various third-party retail stores and the internet, including its own company website, through which it offers for sale and has sold the Pirouline products, as well as a wide variety of its other premium specialty cookie products, throughout the United States and the world, including this judicial district. DBC has been engaged in the sale and/or offering for sale of its products, including the Pirouline products, continuously since the early 1980's.

17. As a result of DBC's extensive use and promotion of its distinctive Helical Stripe Mark in connection with the Pirouline products, the mark has acquired substantial recognition among the public, and the public associates the signature Helical Stripe Mark with DBC and its products.

18. DBC's Helical Stripe Mark is used and highlighted extensively in connection with DBC's advertising and promotional materials, on DBC's website, and in various non-affiliated retail stores (both brick and mortar and online) that sell DBC's Pirouline and other products.

19. DBC has expended considerable resources to create and develop its unique Helical Stripe Mark in connection with the marketing, sale, and distribution of its Pirouline products. As a result of DBC's substantial and significant sales, advertising, promotion and publicity, the Helical Stripe Mark is recognized as emanating from, or being associated with, DBC.

20. DBC's Helical Stripe Trade Dress is distinctive and is recognized by members of the consuming public as an indicator of high-quality products associated with DBC.

21. With permission from DBC, the Pirouline products, featuring the distinctive Helical Stripe Mark, have appeared or been used in connection with various other products sold by some of the largest retailers/manufacturers in the US and Canada, but each time with the disclaimer that the Helical Stripe Mark is a registered trademark of DBC.

DEFENDANT PFC's INFRINGING ACTS

22. According to PFC's website ([www.philfoodtrade.com](www.philfoodtrade.com)) as of the date of this Complaint's filing, PFC is a "major importer and wholesaler of Philippine and Asian products" whose "customers span all of North America."

23. PFC sells and distributes various food products, at least in part through its publicly available online products catalogue ([https://www.philfoodtrade.com/our-products](https://www.philfoodtrade.com/our-products)).

24. It is unclear to DBC whether this online products catalogue represents a complete listing of the products PFC sells and distributes in the stream of commerce.

25. Based on the images available in PFC's online products catalogue and DBC's pre-suit investigation, PFC markets, and,, and/or distributes in the stream of commerce at least five flavors of "Junior Stik-O Wafer Stick" (the "Infringing Products"), apparently manufactured by a Philippine manufacturer.

26. The Infringing Products are cylindrical rolled wafer cookie products, bearing a stripe in a contrasting color with the cookie, and are sold in packaging whose label prominently displays a stripe in a contrasting color on a cookie, and also prominently displays a stripe in contrasting color on the label itself.

27. Exhibit 2 to this Complaint shows images of the strawberry flavor "Junior Stik-O Wafter Stick" Infringing Product and its packaging. The images are also reproduced below for the Court's convenience



**Junior Stik-O Wafter Stick product, strawberry flavor**



8

28. Like DBC's Pirouline and Crème de Pirouline products, the Infringing Products, that PFC distributes and/or sells exhibit a helical stripe extending the length of a cylindrical cookie, in a color contrasting with the cookie (the "Infringing Trade Dress").

29. Like the packaging for DBC's Pirouline and Crème de Pirouline products, the packaging label for the Infringing Products prominently displays the helical stripe and depicts the helical stripe on a rolled wafer cookie product.

30. After DBC invested substantial time, effort, and expense in developing, marketing, and attaining extensive sales of its Pirouline products with the Helical Stripe Mark, PFC began offering to sell and marketing and selling, similar cylindrical rolled wafer cookie products (*i.e.*, the Infringing Products) which were marketed and sold to substantially similar consumers.

31. PFC's online products catalogue offers to sell and/or distribute the Infringing Products in five flavors.

32. PFC has sold, at a minimum, the strawberry flavor Infringing Product to at least one retailer located in this judicial district, from whom consumers in this judicial district have purchased the Infringing Product.

33. Upon information and belief, DBC expects discovery will PFC's sales and/or distribution of the Infringing Products, and potentially other infringing products not presently known, to other retailers in Mississippi and throughout the United States, including episodic sales to various individual local specialty retailers. Upon information and belief, due to their episodic nature, PFC's sales and distribution to these individual local specialty retailers are not otherwise easily documented.

34. PFC's sales and/or distribution of the Infringing Products infringe on DBC's protected rights in its registered Helical Stripe Mark.

35. As PFC's online product catalogue, the Infringing Products, and their packaging all demonstrate, PFC is engaged in a pattern and practice of selling and/or distributing in the stream of commerce products and packaging infringing upon DBC's Helical Stripe Mark.

36. PFC and DBC transact business through interstate commerce.

37. Upon information and belief, PFC is and has been aware of DBC's federal registration for the Helical Stripe Mark; and its sale and/or use of the Infringing Trade Dress has been done willfully in an effort to impermissibly copy DBC's Helical Stripe Mark, to trade on the goodwill created by DBC in its registered mark, and to mislead customers into believing there is an association between PFC and/or the Infringing Products and DBC.

38. PFC's pattern of appropriating DBC's trade dress is likely to cause confusion, mistake, or deception as to the source or origin of the Infringing Products because of the similarity of the helical stripe design and the relatedness of the Infringing Products to those of DBC.

39. Upon information and belief, PFC, by its willful conduct, has made and will continue to make substantial profits and gains to which it is not entitled by law or equity.

40. Because of PFC's demonstrated pattern and practice of infringing conduct, DBC has suffered and will continue to suffer damage unless enjoined by this Court. DBC is without an adequate remedy at law and is suffering irreparable harm.

41. DBC lacks an adequate legal remedy, and is suffering irreparable harm, for many reasons. Absent an injunction, PFC will be able to continue selling and/or distributing infringing products using infringing packaging. This will cause continuing confusion among consumers and will also weaken DBC's federally protected trademark. Moreover, only an injunction will prevent PFC from being able to manufacture, sell, and/or distribute new infringing products and/or using

new infringing packaging. Without an injunction, DBC would be required to continuously file new lawsuits any time PFC does so.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT
### Section 32 of the Lanham Act, 15 U.S.C. § 1114

42. DBC re-alleges and incorporates by reference all of the allegations set forth in all preceding paragraphs as if fully set forth herein.

43. PFC's sales and/or distribution of the Infringing Products and their packaging, are likely to cause confusion, mistake, or deception among customers and the public with DBC's U.S. Trademark Registration No. 1,634,930, including but not limited to confusion, mistake, or deception as to the source or origin of the Infringing Products, in that consumers are likely to believe PFC and/or the Infringing Products are legitimately connected with DBC.

44. PFC has used the Infringing Trade Dress without DBC's consent.

45. As detailed above, PFC has distributed and/or sold products that look similar to DBC's Pirouline and Crème de Pirouline artisan rolled wafers and exhibit trade dress that is confusingly similar to DBC's federally registered trademark, in violation of 15 U.S.C. § 1114; and unless prohibited by this Court, PFC's activities are likely to cause confusion and deception to members of the trade and the public, as well as injury to DBC's goodwill and reputation as symbolized by its federally registered mark, for which DBC has no adequate remedy at law.

46. PFC's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with DBC's federally registered trademark to DBC's irreparable injury.

47. PFC has caused and is likely to continue causing substantial injury to the public and to DBC, and DBC is entitled to injunctive relief and to recover PFC's profits, actual damages,

enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II

### TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, PASSING OFF, AND UNFAIR COMPETITION
### (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

48. DBC re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

49. DBC's Helical Stripe Mark is entitled to protection because it is inherently distinctive and non-functional and/or has acquired distinctiveness.

50. PFC's use of the Infringing Trade Dress is likely to cause confusion with DBC's federally registered Helical Stripe Mark.

51. PFC's use of the Infringing Trade Dress constitutes false designation of origin or sponsorship of the Infringing Products and tends falsely to represent that the Infringing Products originate from DBC or that the Infringing Products have been sponsored, approved, or licensed by DBC or are in some way affiliated or connected with DBC.

52. PFC's conduct is likely to confuse, mislead, and deceive customers, purchasers, and members of the public as to the origin of the Infringing Products or cause said persons to believe that the Infringing Products and/or PFC have been sponsored, approved, authored, or licensed by DBC, or are in some way affiliated or connected with DBC, all in violation of 15 U.S.C. § 1125(a).

53. PFC's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with DBC's federally registered trademark to DBC's irreparable injury.

54. PFC has caused and is likely to continue causing substantial injury to the public and to DBC, and DBC is entitled to injunctive relief and to recover PFC's profits, actual damages, enhanced profits, and damages, costs, and reasonable attorney's fees under 15 U.S.C. § § 1114, 1116, and 1117.

## COUNT III

### TRADEMARK DILUTION
### (Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

55. DBC re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

56. DBC owns the Helical Stripe Mark.

57. DBC's Helical Stripe Mark, registered on the USPTO Principal Register, is non-functional and is famous, as "famous" is used in 15 U.S.C. § 1125(c), due to its inherent or acquired distinctiveness, and the duration, extent, and geographic reach of advertising, publicity of the mark, and sales of the Pirouline and Crème de Pirouline products featuring the mark. By way of example, DBC sells its products featuring the Helical Stripe Mark throughout the United States. DBC also advertises its products featuring the Helical Stripe Mark throughout the United States. Furthermore, DBC's Helical Stripe Mark was famous before either Defendant's first use of the Infringing Trade Dress, based on, among other things, DBC's extensive nationwide use, advertising, promotion, and recognition of the Helical Stripe Mark.

58. As described above, the Helical Stripe Mark is distinctive.

59. Like DBC's products, the Infringing Products are cylindrical wafer cookies.

60. The similarity between DBC's Helical Stripe Mark and the helical stripe on the Infringing Products and their packaging gives rise to an association between the two marks.

61. PFC's actions, as described above, are likely to dilute the distinctive quality of DBC's Helical Stripe Mark by blurring,

## COUNT IV

## CONTRIBUTORY TRADEMARK INFRINGEMENT

62. DBC re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

63. The Infringing Products infringe upon DBC's federally registered trademark.

64. PFC sells the Infringing Products and has sold at least one variety of the Infringing Products to a retailer in this judicial district.

65. Upon information and belief, PFC controls which goods it chooses to sell and could decide to cease selling the Infringing Products.

66. Given the fame and notoriety of DBC's Helical Stripe Mark, and the public association of the Helical Stripe Mark with DBC's products, upon information and belief PFC knows that the Infringing Products it sells infringe on DBC's rights.

67. PFC's sales of the Infringing Products demonstrate that PFC is intentionally causing or knowingly facilitating the infringement of DBC's federally registered trademark.

68. PFC is thus liable for contributory trademark infringement

## COUNT V

## UNFAIR COMPETITION UNDER MISSISSIPPI COMMON LAW

69. DBC re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

70. PFC's actions, as described above, are likely to cause confusion or mistake, or to deceive the public, as to an affiliation, connection, or association between DBC and PFC.

71. PFC's actions, as described above, are likely to cause confusion or mistake, or to deceive the public, as to the origin, sponsorship, or approval of PFC, the products PFC sells and/or distributes, PFC's services, or PFC's commercial activities.

72. PFC's actions constitute infringement of DBC's rights in its Helical Stripe Mark, misappropriation of DBC's goodwill in the mark, and unfair competition under Mississippi common law.

73. PFC's actions as described above constitute material misrepresentations as to the affiliation, connection, or association of PFC with DBC, or as to the origin, sponsorship, or approval of the Infringing Products, PFC's services, or PFC's commercial activities. These material misrepresentations have caused or are likely to cause diversion of trade or harm to the goodwill of DBC and constitute unfair competition under Mississippi common law.

## JURY DEMAND

74. Plaintiff DBC demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DBC respectfully requests that the Court enter judgment in its favor on each Count set forth above and award it relief, including but not limited to the following:

A. An Order declaring that PFC's use of the Infringing Trade Dress on the Infringing Products and their packaging (as well as any other infringing products and/or their packaging, to be identified in discovery) infringes and dilutes DBC's Helical Stripe Mark and constitutes unfair competition under federal and/or state law as detailed above.

B. Preliminarily and permanently enjoin and restrain PFC from:

1. using, registering, or seeking to register the Infringing Trade Dress or any other marks, logos, designs, designations, or indicators that are confusingly

     similar to or dilutive of DBC's Helical Stripe Mark in manners likely to cause confusion or dilution with DBC's Helical Stripe Mark, including but not limited to product packaging;

2  representing by any means whatsoever, directly or indirectly, that PFC, or any products or services offered by PFC or any activities undertaken by PFC, are associated or connected in any way with DBC or sponsored by or affiliated with DBC in any way, including but not limited to product packaging; and

3.  doing any acts calculated or likely to cause confusion or mistake in the mind of the public or the trade or to lead persons into the erroneous belief that PFC or any of PFC's products are associated with DBC, including but not limited to product packaging;

C. Direct PFC to destroy all materials in its possession, custody, or control which use or otherwise contain the Infringing Trade Dress, including all products, labels, tags, boxes, signs, packages, forms, advertisements, bags, or other materials;

D. Require PFC, under 15 U.S.C. § 1117, as well as Mississippi law, to account to DBC for any and all profits derived by it, and for all damages sustained by DBC by reason of the infringement;

E. Require PFC, under 15 U.S.C. § 1117, as well as Mississippi law, to account to DBC for any and all profits derived by it, and for all damages sustained by DBC by reason of its acts complained of herein;

F. Impose treble damages against PFC for its willful trademark infringement, under 15 U.S.C. § 1117;

  G. Award DBC its reasonable attorney's fees, costs, and disbursements incurred on account of this civil action; and

  H. Award DBC such other and further relief as the Court may deem just and proper.

Respectfully submitted this the 7th day of February, 2022.

            **D.B.C. CORPORATION**
            BY ITS ATTORNEYS,
            BRADLEY ARANT BOULT CUMMINGS LLP

            BY: */s/ Michael C. Williams*
                MICHAEL C. WILLIAMS

Jason E. Fortenberry (MSB#102282)
Michael C. Williams (MSB#104537)
James Stephen Fritz, Jr. (MSB#105936)
BRADLEY ARANT BOULT CUMMINGS LLP
188 East Capitol Street, Suite 1000
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
jfortenberry@bradley.com
mcwilliams@bradley.com
sfritz@bradley.com